IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., Plaintiff, v. CASTRO CORP. *et al*, Defendants. | Civil Action No. 11-cv-00188-AW |

**Memorandum Opinion**

Presently pending before the Court is Plaintiff's motion for default judgment against Castro Corp. t/a El Puente De Oro Restaurant and Ciro Castro a/k/a Circo Castro. *See* Doc. No. 16. On January 21, 2011, Plaintiff filed a Complaint against Defendants Castro Corp., Ciro Castro, and Juan Castro. *See* Doc. No. 1. All Defendants were properly served and failed to plead or otherwise defend as directed in the Summons and as provided by the Federal Rules of Civil Procedure. The Clerk of the Court thereafter issued Orders of Default as to Defendants Castro Corp. and Ciro Castro only. *See* Doc. Nos. 13, 14. Plaintiff has filed a motion to stay proceedings in this matter against Juan Castro, a third defendant who filed for bankruptcy under Chapter 7 of the Bankruptcy Code on August 12, 2011. *See* Doc. No. 12. The issues have been fully briefed and the Court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the Court grants Plaintiff's motion but rejects Plaintiff's proposed damages and adjusts the award accordingly.

**I.    BACKGROUND**

Plaintiff J&J Sports Productions, Inc. is an international distributor of sports and entertainment programing. It purchased the domestic commercial exhibition rights to broadcast *"The Dream Match": Oscar De La Hoya v. Manny Pacquiao Welterweight Championship Fight Program* (the "Program"). It thereafter entered into sublicensing agreements with commercial entities throughout the United States, wherein it granted limited public exhibition rights to these entities for the benefit and entertainment of the patrons within their respective establishments (i.e., hotels, racetracks, casinos, taverns, bars, restaurants, social clubs, etc.). The interstate transmission of Plaintiff's Program was encrypted and made available only to Plaintiff's customers, those commercial locations which paid Plaintiff the requisite license fees to exhibit the Program.

Plaintiff alleges that Defendants Castro Corp. and Ciro Castro violated both 47 U.S.C. §§ 553 and 605 by knowingly intercepting, receiving, and exhibiting the Program without authorization. Plaintiff requests enhanced statutory damages for sections 553 and 605 in the amount of $50,000 and $100,000 respectively. Plaintiff also requests $1,500 in compensatory damages for its conversion claim. The record reflects that Ciro Castro was served with the complaint on January 25, 2011, *see* Doc. No. 5, and Castro Corp. was served with the complaint on April 19, 2011, *see* Doc. No. 7. Neither Defendant responded within the requisite time period, and Plaintiff moved for entry of default on October 11, 2011. *See* Doc. No. 9. The Clerk of the Court thereafter issued Orders of Default as to both Defendants. *See* Doc Nos. 13, 14. Shortly thereafter, Plaintiff filed the instant motion for default judgment. *See* Doc. No. 16. Defendants have failed to respond to any of Plaintiff's filings.

II.     STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 55(b)(1), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Where a default has been previously entered by the clerk and the complaint does not specify a certain amount of damages, the court may enter a default judgment, upon the plaintiff's application and notice to the defaulting party, pursuant to Fed. R. Civ. P. 55(b)(2). A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002). The Fourth Circuit has a "strong policy" that "cases be decided on the merits," *Dow*, 232 F. Supp. 2d at 494 (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), but default judgment may be appropriate where a party is unresponsive. *See S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

Upon entry of default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not. *Lawbaugh*, 359 F. Supp. 2d at 422. Federal Rule of Civil Procedure 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. "[C]ourts have generally held that a default judgment cannot award additional damages … because the defendant could not reasonably have expected that his damages would exceed that amount. *In re Genesys Data Tech., Inc.*, 204 F.3d 124, 132 (4th Cir. 2000). Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (citing *S.E.C. v. Mgmt. Dynamics, Inc.*, 515 F.2d

801, 814 (2d Cir. 1975); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981)). While the court may hold a hearing to prove damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins*, 180 F. Supp. 2d at 17 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *see also Laborers' Dist. Council Pension v. E.G.S., Inc.*, Civ. No. WDQ-09-3174, at *3 (D. Md. Apr.16, 2010) ("on default judgment, the Court may only award damages without a hearing if the record supports the damages requested").

## III. ANALYSIS

Plaintiff alleges that Defendants Castro Corp. and Ciro Castro violated both 47 U.S.C. §§ 553 and 605 by knowingly intercepting, receiving, and exhibiting the Program without authorization. Plaintiff requests enhanced statutory damages for §§ 553 and 605 in the amount of $50,000 and $100,000, respectively. Plaintiff also requests $1,500 in compensatory damages for its conversion claim.

Section 605 protects companies against the theft of their proprietary communications, *see Int'l Cabelvision, Inc. v. Sykes*, 75 F.3d 123 (2d Cir. 1996), while section 553 applies to communication thefts from a cable network, *see Home Box Office v. Gee-Cee, Inc.*, 838 F. Supp. 2d 436 (E.D. Mo. 1993). Courts have found in similar cases that the alleged conduct violated both statutes. *See*, *e.g.*, *Kingvision Pay-Per-View, Ltd. v. Las Reynas Rest., Inc.*, Civ. No. 4:07-67, 2007 WL 2700008, at *1 (E.D.N.C. Sept. 11, 2007). Generally, however, plaintiffs cannot recover under both statues for the same conduct and courts allow recovery under only § 605, as it provides for greater recovery. *See*, *e.g.*, *J&J Sports Prod., Inc. v. Greene*, No. 10-0105, 2010 WL 2696672 (D. Md. July 6, 2010). Courts have similarly not allowed recovery for claims of

conversion, as they would not exceed those under §§ 553 or 605 and would result in double-recovery. *See J&J Sports Prod., Inc. v. J.R.'Z Neighborhood Sports Grille, Inc.*, Civ. No. 2:09-03141, 2010 WL 1838432, at *2 (D.S.C. 2010). Thus, because default has been entered, the Court finds that Plaintiff has stated a valid claim under § 605 and will not consider damages under § 553 or for Plaintiff's conversion claim.

    A.    <u>Statutory Damages under § 605(e)(3)(C)(i)(II)</u>

In *J&J Sports Prod., Inc. v. Quattrocche*, Civ. No. WMN-09-cv-3420, 2010 WL 2302353, at *2, Judge Nickerson set forth the relevant considerations in a claim for damages under section 605(e)(3)(C)(i)(II):

> Here, Plaintiff has elected an award of statutory damages, which under 47 U.S.C. § 605(e)(3)(C)(i)(II) entitles Plaintiff to an award "as the court considers just," between a range of $1[,]000 to $10,000 for each unauthorized reception and publication of a radio communication by the defendants in violation of section 605(a). Courts in this Circuit have used two different approaches to exercising its discretion in awarding damages under § 605(e)(3)(C)(i)(II). The first approach has two variations. This approach involves multiplying a certain amount by either the number of patrons observed in the defendant's establishment at the time the program was shown or by the maximum occupancy of the establishment. *Joe Hand Promotions, Inc. v. Bougie, Inc.*, Civ. No. 109-00590, 2010 WL 1790973, at * 5 (E.D. Va. April 12, 2010) (patrons present); *Admiral's Anchor*, 172 F. Supp. 2d at 812 (maximum occupancy); *Entertainment by J & J, Inc. v. Gridiron, Inc.*, 232 F. Supp. 2d 679, 681 (S.D. W.Va. 2001) (maximum occupancy). The first variation seeks to approximate the defendant's profits or the plaintiff's lost earnings assuming each patron would have ordered the event for residential viewing. *291 Bar & Lounge*, 648 F. Supp. 2d at 474. The second variation seeks to award the license fee the defendant would have paid if it had legally purchased the event for exhibition. *Id.* The other approach to calculating damages is to award a flat sum per violation. *J.R.'Z Neighborhood Sports Grille*, 2010 WL 1838432, at *1 ($5000); *Angry Ales*, 2007 WL 3226451, at *5 ($1000); *Kingvision Pay-Per-View Ltd. v. Gadson*, Civ. No. 1:04-678, 2007 WL 2746780, at * 2 (M.D.N.C. Sept.18, 2007) ($10,000); *Las Reynas Restaurant*, 2007 WL 2700008, at * 3 ($2000).

In support of Plaintiff's argument that it is entitled to the maximum amount of statutory damages, Plaintiff attaches an affidavit of a private investigator who witnessed seven televisions

5

showing the Program in Defendants' establishment. The investigator counted between 51 and 52 patrons during the time she was present, about 15 minutes, and estimated the capacity of the establishment to be 150 people. However, the investigator stated that she paid no cover charge to enter the establishment, and Plaintiff does not provide any sort of "rate card" demonstrating the cost for Defendants to legally purchase the broadcast. *Cf. Greene*, 2010 WL 2696672, at * 5 (awarding statutory damages of $2,200 based on a rate card provided by Plaintiff demonstrating that it would have cost Defendant that amount to legally purchase the broadcast). Thus, the Court cannot calculate with specificity the amount of profit Defendants realized as a result of illegally obtaining the broadcast. Accordingly, Plaintiff will be awarded statutory damages under § 605(e)(3)(C)(i)(II) equal to the lesser amount of $1,750.

### B. Enhanced Damages under § 605(e)(3)(C)(ii)

Plaintiff additionally argues that it is entitled to enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), which authorizes damages of up to $100,000 for each violation if the Court determines that the violations were committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain." Courts look to several factors in determining whether enhanced damages are warranted, such as: (1) evidence of willfulness; (2) repeated violations over an extended period of time; (3) substantial unlawful monetary gains; (4) advertising the broadcast; and (5) charging an admission fee or charging premiums for food and drinks. *See*, *e.g.*, *Quattrocche*, 2010 WL 2302353, at *2.

There is no dispute that Defendants' actions in broadcasting the Program were willful and for direct or indirect commercial advantage. The program was encrypted and authorized for viewing only by Plaintiff's customers, and "[s]ignals do not descramble spontaneously, nor do

television sets connect themselves to cable distribution systems." *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999). There is no evidence, however, that Defendants engaged in repeated violations, that the establishment advertised the broadcast to potential customers in the days or weeks prior to airing it, or that any kind of an admission fee was charged or premiums put on the food and drinks. Moreover, the maximum award of $100,000 is clearly excessive in light of nearly identical cases resolved before this Court. *See Greene*, 2010 WL 2696672, at *5 (ordering a total damages award of $8,800); *see also Quattrocche*, 2010 WL 2302353, at *3 (ordering a total damages award of $5,000). Plaintiff has provided no special facts in this case which would lead the Court to deviate from its prior holdings.

However, the Court finds that some form of enhanced damages are proper in order to deter the unlawful use of communications such as the Program. Where there are no allegations of repeat behavior or other factors suggesting egregious willfulness, Courts generally award around three to six times the statutory damages award in enhanced damages. *Greene*, 2010 WL 2696672, at *5 (awarding three times the statutory damages in enhanced damages); *Quattrocche*, 2010 WL 2302353, at *3 (awarding five times the statutory damages); *J.R.'Z Neighborhood Sports*, 2010 WL 1838432, at *2 (awarding three times the statutory damages); *Angry Ales*, 2007 WL 3226451, at *5 (awarding two times the statutory damages). Here, where the evidence suggests that no admission fee was charged and Plaintiff has provided no evidence demonstrating the cost for Defendants to legally purchase the Program, the Court will multiply the statutory damages amount by a factor of three. Thus, Plaintiff will be awarded enhanced damages under § 605(e)(3)(C)(ii) in an amount of $5,250 for a total damages award of $7,000.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment will be granted and judgment will be entered in Plaintiff's favor in the total amount of $7,000 jointly and severally against Defendants Castro Corp. and Ciro Castro. A separate order will follow.

November 1, 2011                                              /s/
    Date                                          Alexander Williams, Jr.
                                                                             United States District Judge